IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HIRAM R. STOOKSBURY, | § |
| Petitioner, | § |
| | § |
| v. | § Civil Action No. |
| | § 3:11–CV–2893–D (BH) |
| RICK THALER, | § |
| Director, Texas Department of | § |
| Criminal Justice, Correctional | § |
| Institutions Division, | § |
| Respondent. | § |

## RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

Petitioner Hiram R. Stooksbury was convicted of aggravated sexual assault of a child and sentenced to life imprisonment by a Texas state court. The petition should be dismissed with prejudice because the claims presented lack merit.

## JURISDICTION

Stooksbury seeks habeas corpus relief in this Court pursuant to 28 U.S.C. § 2254, which provides the Court with jurisdiction over the subject matter and the parties as Stooksbury was convicted within this Court's jurisdiction.

## PETITIONER'S ALLEGATIONS

Respondent Rick Thaler understands Stooksbury to allege the following grounds for relief:

1.    His trial counsel was ineffective for:

   a.    failing to object or request a limiting instruction;
   b.    failing to move for a mistrial

      c.     failing to investigate and call witnesses; and

      d.     failing to impeach the investigating officer.

2.     He was denied a fundamentally fair trial by the cumulative effect of his trial counsel's ineffectiveness.

3.     His appellate counsel was ineffective for failing to raise issues on direct appeal.

Fed. Writ Pet. at 7; Pet. Memo.

## GENERAL DENIAL

The Director denies all of Stooksbury's assertions of fact except those supported by the record or specifically admitted herein.

## STATEMENT OF THE CASE

## I.   Procedural History

Stooksbury challenges the Director's custody of him pursuant to a judgment and sentence of the 40th Judicial District Court of Ellis County, Texas, in cause number 32277CR. CR[1] 35–39. Stooksbury was charged with aggravated sexual assault of a child with a prior conviction alleged for enhancement of punishment, to which he entered a plea of not guilty. *Id.* at 2, 35–39. A jury found Stooksbury guilty as charged, and assessed punishment at life imprisonment. *Id.*

The Tenth Court of Appeals of Texas affirmed Stooksbury's conviction on September 9, 2009. *Stooksbury v. State*, No. 10–08–00174–CR, slip op. (Tex. App.—Waco 2009, pet. ref'd.). Stooksbury's petition for discretionary review was refused by the Texas Court of Criminal Appeals on February 24,

---

[1] "CR" refers to the Clerk's Record of pleadings and documents filed with the trial court. "SHCR" refers to the written pleadings contained within *Ex parte Stooksbury*, No. 76,223–01 (Tex. Crim. App. 2011).

2010. *Stooksbury v. State*, No. PD–1382–09.

Stooksbury filed a state application for writ of habeas corpus challenging his conviction on May 13, 2011. SHCR at 92. The Texas Court of Criminal Appeals denied Stooksbury's application without written order on October 12, 2011. *Id.* at cover. Stooksbury filed the instant petition on October 19, 2011. Fed. Writ Pet. at 9.

## II.    Statement of Facts

In January 2007, J.S. made an outcry to her mother, Christina, regarding sexual abuse by her father, Stooksbury. 6 RR[2] 142–44. J.S. told her mother that Stooksbury had performed oral sex on her when they lived in Nebraska, where they lived from the time J.S. was two years old until she was about eight or nine years old. *Id.* 144–45. J.S. was sobbing when she told her mother, and asked her not to tell anymore. *Id.* 146–47. The last time Stooksbury abused her was before he moved out of the family home in September 2004. *Id.* at 145. At that time, the family lived in Midlothian, in Ellis County, Texas. *Id.* at 37–38, 216.

Cristina initially took the information to her attorney, who suggested that she take J.S. to a counselor. 6 RR 149–51. She did not think of calling the police because she just wanted to see if there was a way to keep Stooksbury away from J.S. *Id.* at 149–50. On February 16, 2007, Christina contacted the police, who scheduled an appointment at the children's advocacy center. *Id.* at 20, 25.

_____

[2] "RR" refers to the reporter's record in Stooksbury's trial court proceeding, preceded by the volume number and followed by the page numbers.

At the advocacy center, J.S. spoke to Katherine Jones, an investigative supervisor with Child Protective Services. 6 RR 64, 60. Because J.S. was fourteen years of age at the time, Jones had her write out a statement and told her to include specific details, including the last event. *Id.* at 64. Jones also spoke to Stooksbury who told her that his ex–wife, Cristina, was vindictive and that the accusation was custody related. *Id.* at 71. He did not indicate any reason the child would make up the story. *Id.* at 72. Jones ruled the case "reason to believe." *Id.* at 74. The statement by J.S. described fondling, oral sex, and digital penetration. *Id.* at 76.

At the time of the trial, J.S. was fifteen and a freshman in high school. 6 RR 212. J.S. testified that she had told her mother that she did not want to go to her father's house for the weekend. *Id.* at 214. She then told her mother that her father had performed oral sex on her. *Id.* at 215.

The last time Stooksbury had abused her had been at the house in Midlothian when her mother had gone to El Paso to see her grandfather in February or March of 2003. 6 RR 216, 210. J.S. and her brothers were watching a movie with their father in his bedroom, and her brothers had fallen asleep on the floor. *Id.* at 217. She felt something touching her leg and discovered Stooksbury was taking off her pants. *Id.* at 218. She did not say anything at this time because the last time she tried to say no, Stooksbury told her to be quiet. *Id.* at 218. Stooksbury put his hand in her underwear and "was messing around" with her vagina. *Id.* at 219. He put his finger inside her vagina and moved it side to side. *Id.* at 219–20. He also put his mouth on her vagina. *Id.* at 221. After he stopped, he took her into the

4

kitchen and told her he was not going to do it anymore. 6 RR 223. J.S. did not believe him because he had said that before. *Id.* J.S. did not tell her mother at the time because she did not think her mother would believe her or protect her. *Id.* at 224–25.

When they lived in Nebraska, Stooksbury would get J.S. to lay down with him when he was drunk. 6 RR 226–27. He touched her the same way more than ten times. *Id.* at 230–31. She never told her mother or brothers. *Id.* at 229–30. The same things happened when they lived in Montana. *Id.* at 235. She could tell by the smell that Stooksbury had always been drinking when it happened. *Id.* at 237.

## RECORDS

Records of Stooksbury's trial, appeal, and state habeas proceedings have previously been forwarded to the Court.

## EXHAUSTION/LIMITATIONS/SUCCESSIVE PETITION

The Director believes that Stooksbury has sufficiently exhausted his state court remedies as required by 28 U.S.C. § 2254(b). The petition is not barred by limitations, 28 U.S.C. § 2244(d), or subject to the successive petition bar, 28 U.S.C. § 2244(b).

## ANSWER

Stooksbury's petition is governed by the standard of review provided by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254; *Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding AEDPA only applies to those noncapital habeas corpus cases filed after its effective date of April 24, 1996). Under 28 U.S.C. § 2254(d), a federal court may not

issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the relevant constitutional claim by the state court, (1) "'was contrary to' federal law then clearly established in the holdings of" the Supreme Court; or (2) "'involved an unreasonable application of'" clearly established Supreme Court precedent; or (3) "'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (quoting *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000)); 28 U.S.C. § 2254(d). Review of a state court's decision "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398–99 (2011).

The Supreme Court has explained that a state court decision is "contrary" to established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent, yet reaches an opposite result. *Williams*, 529 U.S. at 405–06. And a "run–of–the–mill" state court decision applying the correct Supreme Court rule to the facts of a particular case is to be reviewed under the "unreasonable application" clause. *Williams*, 529 U.S. at 406. To this end, a state court unreasonably applies Supreme Court precedent only if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case. *Id.* at 407–09. And in order to determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . . *could have supported*, the state

court's decision; and then it must ask *whether it is possible fairminded jurists could disagree that those arguments* or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 131 S. Ct. at 786 (emphasis added). Indeed, this is the "only question that matters under § 2254(d)(1)." *Id.*

Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision. *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) (federal habeas relief is only merited where the state–court decision is both incorrect and objectively unreasonable, "whether or not [this Court] would reach the same conclusion"). Moreover, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case–by–case determinations." *Alvarado*, 541 U.S. at 664. This is particularly true when reviewing a state court's application of *Strickland v. Washington*, 466 U.S. 668 (1984), which when analyzed in conjunction with § 2254(d), creates a difficult to surmount, "doubly" deferential assumption in favor of the state court denial. *Richter*, 131 S. Ct. at 786.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786.

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility fairminded jurists could disagree* that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against *extreme malfunctions* in the state criminal justice systems," *not a substitute for ordinary error correction through appeal*.

*Id.* (emphasis added) (internal citations omitted).

Moreover, it is the state court's "ultimate decision" that is to be tested for unreasonableness, and not every jot of its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (". . . we review only the state court's decision, not its reasoning or written opinion . . . ."). Indeed, state courts are presumed to know and follow the law. *Visciotti*, 537 U.S. at 24. And, even where the state court fails to cite to applicable Supreme Court precedent or is unaware of such precedent, AEDPA's deferential standard of review nevertheless applies "so long as neither the reasoning nor the result of the state–court decision contradicts [Supreme Court precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Richter*, 131 S. Ct. at 786.

If the Supreme Court has not "broken sufficient legal ground to establish [a] . . . constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar" under either the contrary to or unreasonable application standard. *Williams*, 529 U.S. at 381. Stated differently:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was *an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Richter*, 131 S. Ct. at 786–87 (emphasis added). And a federal court must be wary of circumstances in which it must "extend a [legal] rationale" of the Supreme Court "before it can apply to the facts at hand . . ." because such a process suggests the proposed rule is not clearly established. *Alvarado*, 541 U.S. at 666.

AEDPA also provides that the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

And except for the narrow exceptions contained in § 2254(e)(2), the evidence upon which a petitioner would challenge a state court fact finding must have been presented to the state court. Because a federal habeas court is prohibited from granting relief unless a decision was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," it follows that demonstrating the incorrectness of a state court fact finding based upon evidence not presented to the state court would be of no avail to a habeas petitioner. 28 U.S.C. § 2254(d)(2).

Finally, an evidentiary hearing is precluded unless (1) a petitioner's claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) the petitioner establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254(e)(2). A failure to meet this standard of "diligence" will bar a federal evidentiary hearing in the absence of a convincing claim of actual innocence that can only be established by newly discovered evidence. *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000). For example, a petitioner who does not present controverted, previously unresolved factual issues to the state court is sufficient to constitute "failure" under the plain meaning of § 2254(e)(2). *Id.* at 433. However, § 2254(e)(2) has "force [only] where § 2254(d)(1) does not bar federal habeas relief." *Pinholster*, 131 S. Ct. at 1401. Accordingly, even if a petitioner can leap the § 2254(e)(2) hurdle, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.* at 1400. And whatever discretion remains after *Pinholster* to hold an evidentiary hearing, it still remains appropriate to deny such a hearing if sufficient facts exist to make an informed decision on the merits. *Schriro v. Landrigan*, 550 U.S. 465, 474–75 (2007).

## I.    Stooksbury Received Effective Assistance of Trial Counsel.

Stooksbury alleges that his trial counsel was ineffective in four instances. Fed. Writ Pet. at 7; Pet. Memo. These claims lack merit, and should be dismissed with prejudice.

A.    **Standard of Review**

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the assistance of counsel. U.S. Constitution Amend. VI. The Supreme Court has recognized that "the right to counsel is the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n.14. (1970) (emphasis added). The proper standard for evaluating the effectiveness of counsel is reasonable performance under prevailing professional norms. *Strickland*, 466 U.S. 668.

To successfully state a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687; *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003). The Supreme Court has admonished that judicial scrutiny of counsel's performance "must be highly deferential," with every effort made to avoid "the distorting effect of hindsight," and instead "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "[S]econd–guessing is not the test for ineffective assistance of counsel." *King v. Lynaugh*, 868 F.2d 1400, 1405 (5th Cir. 1989). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Strickland*, 466 U.S. at 688–89.

In *Richter* the Supreme Court described the stark limits imposed on the federal courts when reviewing a state court's Strickland determination:

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post–trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. *Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.* It is all too tempting to second–guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. *The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Richter*, 131 S. Ct. at 788 (emphasis added) (internal quotations and citations omitted). The Fifth Circuit has further described the manner in which a federal court is to review a state court's *Strickland* determination under AEDPA:

> It bears repeating that the test for federal habeas purposes is *not* whether [petitioner] *made* that showing. Instead, the test is whether the *state court's decision*–that [petitioner] did *not* make the *Strickland* showing–was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his IAC claim. Of course, in reaching our decision, we must consider the underlying *Strickland* standards.

*Schaetzle*, 343 F.3d at 444 (emphasis added).

Generally, the burden of proof in a habeas corpus proceeding attacking the effectiveness of trial counsel is upon the petitioner, who must demonstrate that ineffectiveness by a preponderance of the evidence. *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). A petitioner's failure to establish either prong of *Strickland* necessarily requires a finding that counsel's performance was constitutionally effective. *Strickland*, 466 U.S. at 687; *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

*Strickland*'s first prong requires a petitioner to establish that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. The courts will "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also Wilkerson v. Collins*, 950 F.2d 1054, 1064 (5th Cir.1992) (a reviewing court must be highly deferential to the trial attorney's conduct and presume that the assistance was reasonably effective).

Furthermore, there is a strong presumption that counsel's strategic decisions cannot amount to ineffectiveness: "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the

13

entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690. So too, trial counsel will not be deemed ineffective for failing to advance a defensive theory when his decision was a reasonable strategic choice based upon a "professional assessment of the plausibility of the defense and its prospects for success at trial." *Moreno v. Estelle*, 717 F.2d 171, 177 (5th Cir. 1983).

### B.   Stooksbury Fails To Meet His Burden To Prove His Trial Counsel Was Ineffective.

#### 1.   Failing to object

Stookbury claims that his trial counsel was ineffective for failing to object or request a limiting instruction to the use of an extraneous offense, perjured testimony, remarks of the trial court, and a violation of the motion in limine. Fed. Writ Pet. at 7. Stooksbury fails to meet his burden of proof. His claims should be dismissed with prejudice.

Counsel is not required to file frivolous motions or make frivolous objections. *Green*, 160 F.3d at 1037; *McCoy v. Lynaugh*, 874 F.2d 954, 963 (5th Cir. 1989). It is settled that "failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness . . . ." *Green*, 160 F.3d at 1037 (citing *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995)); *accord McCoy*, 874 F.2d at 963. Further, the Supreme Court has noted that a petition that presents "conclusory allegations unsupported by specifics is subject to summary dismissal, as are

contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Stooksbury alleges his trial counsel was ineffective for failing to object or request a limiting instruction to the use of an extraneous offense, perjured testimony, remarks of the trial court, and a violation of the motion in limine. Fed. Writ Pet. at 7. Stooksbury fails to specify at what point counsel should have raised such objections. *Id.* Stooksbury provides no specific facts or law to support these claims. A mere conclusory allegation does not raise a constitutional issue in a habeas proceeding. *See Ross*, 694 F.2d at 1012 (citing *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982)).

Stooksbury further fails to meet his burden to prove that trial counsel was not employing sound trial strategy in these instances. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). Here, Stooksbury's attorneys acted reasonably in making objections where appropriate and not objecting where an objection would be frivolous. *See*, *e.g.*, 6 RR 20–21, 29,31–33, 40, 51, 70, 77–78. Stooksbury fails to meet his burden of proof and does not demonstrate that his trial counsel were ineffective for failing to object or were in some way objectively unreasonable in their actions. Stooksbury has further failed to show his trial counsel were ineffective because he has not overcome the presumption that the actions were trial strategy.

Stooksbury's counsel addressed these claims in their affidavits to the state habeas court:

> I understand that Appellant Stooksbury alleges that the defense failed to object to evidence of extraneous offenses and therefore was ineffective. Our decision not to object was unequivocally trial strategy. In fact, during multiple office conferences with

Appellant, specific discussions were held regarding this trial strategy. Our strategy was to portray the allegations were fabrications of a bitter, angry, vindictive wife. Furthermore, Appellant actively participated in the defense's trial strategy, by supplying counsel with inflammatory pictures with the "other woman" and chronologicals of events in the family home that made his first wife and daughter angry and resentful.

I specifically recall during a recess in trial that Appellant Stooksbury was almost giddy with delight that the defense with the prosecution's help was portraying his ex–wife and daughter victim as jealous bitter family members capable of retaliating against him by fabricating the allegations. In keeping with this strategy, objections were also not made regarding evidence of Appellant's Stooksbury's (sic) confrontation with his daughter regarding daughter's dating association with an older male.

I, also, understand that Appellant alleges that the defense team failed to object to references regarding his right to remain silent and therefore was ineffective. Our decision not to object was unequivocally trial strategy. The State elaborated extensively on law enforcement's efforts to execute their felony arrest warrant. Testimony included searching for Applicant across county lines. Testimony including utilizing telephone technology to locate Applicant's whereabouts. Officers finally apprehended him at this mother–in–law's house with guns drawn and wearing protective SWAT gear. At the time of his arrest Applicant made res gestae statements regarding trying to make bond arrangements and employ legal counsel. As defense counsel, we are well aware that flight can be considered evidence of guilt by a jury. Therefore, we elicited counter testimony establishing that Applicant was not fleeing or hiding but rather exercising his right to consult with an attorney to assist in navigating through judicial waters. His invocation of his constitutional right to remain silent without an attorney present bolstered this argument.

SHCR at 175, 177–78.

Moreover, Stooksbury's claims should be denied because he cannot prove the prejudice prong of the *Strickland* test. As described previously

under the "Statement of Facts" section, the evidence conclusively established Stooksbury's guilt as charged; therefore, he cannot prove that the result of the trial would have been different had counsel acted differently. *See Wilkerson v. Whitley*, 16 F.3d 64, 68, (5th Cir. 1994), *opinion reinstated in part on other grounds*, 28 F.3d 498 (5th Cir. 1995) (if facts adduced at trial point so overwhelmingly to defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, defendant's ineffective assistance of counsel claim must fail). This claim should be dismissed with prejudice.

### 2.    Failing to move for a mistrial

Stooksbury alleges that his trial counsel was ineffective for failing to move for a mistrial. Pet. Memo at 2. He fails to meet his burden to prove that counsels' actions were deficient or that, but for counsels' actions, the outcome of his trial would have been different. This claim is without merit and should be dismissed with prejudice.

Indeed, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)); *see also United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) ("'Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." (quoting *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir.1999))); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given

the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."). "It is oft–recognized that the decision not to seek a mistrial is frequently a strategic one." *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008) (citing *Ward v. Dretke*, 420 F.3d 479, 491 (5th Cir. 2005) and *United States v. Moran*, 393 F.3d 1, 10 (1st Cir. 2004)). Stooksbury fails to rebut the presumption that counsel was following a sound trial strategy.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Stooksbury has failed to establish that he was prejudiced by the actions of his trial counsel. Stooksbury does not establish that the state court's judgment was contrary to, or an unreasonable application of Supreme Court law with respect to his claim. Therefore, Stooksbury's claim does not merit federal habeas relief and should be dismissed with prejudice.

### 3.    Failing to investigate and call witnesses

Stooksbury alleges his trial counsel was ineffective for failing call witnesses. Pet. Memo at 2. Specifically, Stooksbury contends that Jamie King and Todd Phillippi should have been called as witnesses. *Id.*

Where the only evidence of a missing witness's testimony is from the defendant, a reviewing federal court should view a claim of ineffective assistance with great caution. *See Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986) (citing *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985)); *see also U.S. v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (Cockrell

failed to produce the affidavit of the uncalled witness). An unsupported claim should be dismissed as a conclusory allegation. *See Ross*, 694 F.2d at 1011. Stooksbury's claim of ineffective assistance of counsel must fail because Stooksbury fails to provide any evidence to support his claim, and it is thus conclusory.

Additionally, for a petitioner to demonstrate the required *Strickland* prejudice, the petitioner must show not only that the witness's testimony would have been favorable, but also that the witness would have testified at trial. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (citing *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981)); *Gomez v. McKaskle*, 734 F.2d 1107, 1109–10 (5th Cir. 1984). Stooksbury makes no such showing here. He does not allege whether the testimony of the alleged missing witnesses would have been favorable to his defense, or that any witness would have testified at all.

Stooksbury is required to produce an affidavit, or similar evidentiary support, from the uncalled witnesses. *See U.S. v. Cockrell*, 720 F.2d at 1427; *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001). Stooksbury provides no evidentiary support that either Jamie King or Todd Phillippi would have been available to testify or that their testimony would have been favorable, relevant or admissible. Fed. Writ Pet. at 7; Pet. Memo. Stooksbury is now barred from producing evidentiary support that he did not present to the state courts. *See Williams v. Taylor*, 120 S.Ct. 1479, 1491–92 (2000) (AEDPA barred further development of Brady claim where Petitioner had notice of the claim). The failure to produce an affidavit (or similar evidentiary support)

from the uncalled witness is fatal to the claim of ineffective assistance. *U.S. v. Cockrell*, 720 F.2d at 1427 (complaint of uncalled witnesses failed where petitioner failed to present affidavits from the missing witnesses; *Sayre*, 238 F.3d at 636 (same). Thus, Stooksbury fails to prove that his defense was prejudiced by his counsel's actions.

Finally, such complaints are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative. *See Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (quoting *Buckelew v. U.S.*, 575 F.2d 515, 521 (5th Cir. 1978)). Hypothetical or theoretical testimony will not justify the issuance of a writ. *See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) (quoting *Larsen v. Maggio*, 736 F.2d 215, 218 (5th Cir. 1984)). Stooksbury's claim that his trial counsel was ineffective is without merit and should be dismissed with prejudice.

Stooksbury's trial counsel addressed these claims in their affidavits to the state habeas court. Trial counsel Martinez and Cox stated:

> Regarding our decision not to call Todd Phillippi as a witness, the defense team received information regarding Mr. Phillippi that was followed up with a person conversation with Mr. Phillippi. Mr. Phillippi did not have personal relevant information regarding the facts of the case. Mr. Phillippi represented first wife in divorce proceedings against Appellant. Mr. Phillippi could not provide testimony to impeach the victim or the victim's mother. Mr. Phillippi did refer his client to a therapist to counsel her daughter to address behavioral questions. Mr. Phillippi subsequently referred the family to Jamie King, a professional counselor.

> In the course of our representation, the defense team engaged in multiple conferences and negotiations with the District Attorney's Office. Defense counsel, secured a special setting for Appellant Stooksbury to accept a seven year TDC offer to conclude the case. However, at the setting Appellant report to his defense team that he had met improperly the night before the plea with daughter victim. Appellant reported to defense counsel that daughter victim would not testify against Appellant and Appellant no longer wished to proceed with his plea.
>
> At the special setting, the District Attorney withdrew the offer and further preparations for trial were held. In planning the presentation of the defense's case, consideration was made regarding calling Ms. King. Defense counsel feared that testimony from Ms. King could potentially expose Appellant to additional charges or further allegations of abuse.

SHCR at 175–78. Stooksbury fails to meet his burden to prove that trial counsel were not acting according to reasonable trial strategy.

Additionally, the state court has already considered and rejected these claims. In rejecting this claim, the state habeas court made an implicit credibility choice in favor of counsel and thus counsels' statements in their affidavit are presumptively correct facts under 28 U.S.C. §2254(e). Stooksbury fails to prove that the state court's findings of fact and conclusions of law were contrary to, or an unreasonable application of Supreme Court law with respect to his claim. Therefore, Stooksbury's claim should be dismissed with prejudice.

### 4.    Failing to impeach the investigating officer

Stooksbury next claims that counsel failed to impeach Officer Bovinich with regard to his inconsistent testimony. Pet. Memo at 2. Stooksbury does not provide any evidence to support his claim, nor does he overcome the

presumption that under the circumstances the challenged action might be considered sound trial strategy. *See Strickland*, 466 U.S. at 690. Stooksbury's claim that his trial counsel were ineffective for failing to impeach a witness is conclusory and without merit. A conclusory allegation does not state a claim for federal habeas corpus relief and is subject to summary dismissal. See *Koch v. Puckett*, 907 F.2d 524, 529 (5th Cir. 1990). Furthermore, counsel pointed out inconsistencies in Officer Bovinich's testimony through her cross–examination of him. 6 RR 40–50, 52–59.

Stooksbury fails to prove that the state court's decision was contrary to, or an unreasonable application of Supreme Court law with respect to his claim. Stooksbury also has not shown that "that the state court's ruling on the claim being presented in federal court [is] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786–87. Stooksbury's claim of ineffective assistance of counsel claim does not warrant habeas relief and should be dismissed with prejudice.

### 5. Cumulative Error

Finally, Stooksbury alleges that the cumulative effect of counsel's errors deprived him of effective assistance of counsel. Fed. Writ Pet. at 7. His claim is without merit. As demonstrated above, Stooksbury has failed to show that his counsel was deficient or that he was prejudiced by counsel's performance. Because all of Stooksbury's ineffective assistance of counsel claims lack merit, he has failed to show that he was denied the effective assistance of counsel as a result of cumulative error. *United States v. Moye*,

951 F.2d 59, 63 n. 7 (5th Cir. 1992) ("Because we find no merit to any of Moye's arguments of error, his claim of cumulative error must also fail"); *see also Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (holding that relief can be granted for cumulative error in the conduct of a state trial where (1) the errors involved matters of "constitutional dimension"; (2) they are not procedurally defaulted; and (3) they "so infected the entire trial that the resulting conviction violates due process."). Thus, the state court's determination to deny relief was not in conflict with clearly established federal law or "based on an unreasonable determination of the facts in light of the evidence." Consequently, relief should be denied and Stooksbury's petition should be dismissed with prejudice. 28 U.S.C. § 2254(d).

## II.   Stooksbury Received Effective Assistance Appellate Counsel.

Stooksbury alleges his appellate counsel was ineffective for failing to raise insufficient evidence as an issue on appeal. Fed. Writ. Pet. at 7; Pet. Memo at 3. Stooksbury fails to meet his burden to prove that his appellate counsel was ineffective, and his claims should be dismissed with prejudice.

The *Strickland* standard set forth above applies to claims of appellate counsel error. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). In considering the deficient performance prong, an attorney's decision not to pursue a certain claim on appeal after considering the claim and believing it to be without merit falls within the "wide range of professionally competent assistance" demanded by Strickland. *Smith v. Murray*, 477 U.S. 527, 536 (1986). Indeed, the process of "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the

hallmark of effective appellate advocacy." *Id.* (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)) (internal quotations omitted); *see also Robbins*, 528 U.S. at 288 (noting that notwithstanding *Jones v. Barnes*, "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent."); *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989) ("[t]he Constitution does not require appellate counsel to raise every non–frivolous ground that might be pressed upon appeal"); *U.S. v. Williamson*, 183 F.3d 458, 462–63, n.7 (5th Cir. 1999) (holding that "[s]olid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention" by appellate counsel; however, because "factual differences will make authority easily distinguishable, whether persuasively or not . . . it is not necessarily providing ineffective assistance of counsel to fail to construct an argument that may or may not succeed.").

Prejudice in the context of appellate counsel error requires the petitioner to demonstrate a reasonable probability that he would have prevailed on appeal, *Robbins*, 528 U.S. at 285–86, and the prejudice inquiry is determined under the current state of the law, as opposed to the state of law in effect at the time of the underlying state court direct appeal. *Briseno v. Cockrell*, 274 F.3d 204, 211 (5th Cir. 2001); *Westley v. Johnson*, 83 F.3d 714, 723 (5th Cir. 1996). Here, Stooksbury alleges that his appellate counsel should have raised legal and factual sufficiency of the evidence as grounds of error on his direct appeal. Fed. Writ Pet at 7; Pet. Memo at 3. Under the current state of the law, factual sufficiency of the evidence is not cognizable.

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). Thus, Stooksbury's appellate counsel cannot prove he was prejudiced by his appellate counsel's failure to raise a factual sufficiency ground on direct appeal.

Appellate counsel Mark Griffith addressed Stooksbury's allegations in an affidavit to the state habeas court, stating:

> After reading the entire record on three different occasions, including the Clerk's Record, it was determined that an argument or point of error regarding factual and/or legal insufficiency of the evidence did not have any merit and that if it was placed in the brief it would potentially dilute and take attention away from the eight points of error that I felt had sufficient merit to be argued on appeal. The alleged victim in this case, [J.S.], testified with great detail of several accounts wherein she stated that Applicant sexually assaulted her. The victim in this case never recanted during her testimony or in any way diverted from the accounts of sexual abuse she said that Applicant performed on her. There were also multiple witnesses, including an outcry witness, that testified regarding what the victim had told them regarding the sexual abuse. There was no substantial difference between what the victim testified to at trial and what the outcry witness testified to at trial. I consciously and strategically did not include either a legal or factual insufficiency of the evidence point of error because I believed the appellate court would look at such argument as without merit based on the status of the record. I did not want to include such a point of error among the eight that were included because I did not want to have a point of error included that would potentially create in the minds of the appellate judges that I was simply arguing anything and everything, regardless of merit, rather than arguing the issues with solid and serious appellate merit. It was a strategic decision on my part not to dilute the brief with what I considered an argument with no merit and have that take away from the eight points argued that I felt had strong merit. The issue was specifically considered during the process of preparing and researching the brief. After much discussion regarding all potential points of error a strategic decision was made not to argue insufficiency, either legal or

factual, based on the manner in which the appellate Courts determine these issues. It was my belief, and remains so today, that the testimony of the victim alone, without even considering the outcry statement, would be more than sufficient to suffice as both legally and factually sufficient under the test for both of these as set forth in many appellate opinion I researched regarding the issue of legal and factual insufficiency of the evidence.

SHCR at 171–72. In rejecting this claim, the state habeas court made an implicit credibility choice in favor of counsel and thus counsel's statements in his affidavit are presumptively correct facts under 28 U.S.C. §2254(e).

Furthermore, with regard to Stooksbury's legal sufficiency of the evidence claim, the uncorroborated testimony of a child victim is sufficient to prove aggravated sexual assault of a child. Tex. Code Crim. Proc. Art. 38.07. J.S., a child a victim, testified in detail with regard Stooksbury's actions that constituted aggravated sexual assault. Statement of Facts, *supra*; *see also* 6 RR 212–84, 7 RR 6–15. Stooksbury's underlying claim that the evidence was legally insufficient to support his conviction is without merit. Thus, counsel's strategic decision not to raise sufficiency of the evidence as a ground on direct appeal was not ineffective.

Stooksbury has not shown that the state court's decision regarding his claims was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Nor has he shown that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Further, the state habeas court's rejection of this claim means Stooksbury cannot show prejudice. *See Schaetzle*, 343

F.3d at 443–44. Therefore, Stooksbury's claim does not merit federal habeas corpus relief and should be dismissed with prejudice.

## III.  Stooksbury's State Habeas Claim Is Not Cognizable.

To the extent Stooksbury claims he was denied due process during his state habeas corpus proceedings, this claim is not cognizable and should be dismissed with prejudice. Pet. Memo at 6. The Fifth Circuit has held that "infirmities in state habeas corpus proceedings do not state a claim for federal habeas corpus relief." *Vail v. Procunier*, 747 F.2d 277 (5th Cir. 1984); *see also Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995)("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotation marks omitted); *Duff–Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992) (same); *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987) (same). Even if Stooksbury states a meritorious claim, which he has not, this court cannot provide the relief that he seeks. Therefore, his claim should be dismissed with prejudice.

## CONCLUSION

The Director respectfully requests that the petition for writ of habeas corpus be denied and dismissed with prejudice, and that no certificate of appealability issue.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

27

DON CLEMMER
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Postconviction Litigation Division

/s/ Melissa L. Hargis
MELISSA L. HARGIS*
*Lead Counsel          Assistant Attorney General
State Bar No. 24055766

P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 936–1400
Facsimile No. (512) 936–1280

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing pleading

was served by placing same in the United States Mail, postage prepaid, on

this the 8th day of May, 2012, addressed to:

Hiram R. Stooksbury
TDCJ No. 1484372
Coffield Unit
2661 FM 2054
Tennessee Colony, Texas 75884

/s/ Melissa L. Hargis
MELISSA L. HARGIS
Assistant Attorney General