**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **HIRAM R. STOOKSBURY, ID # 1484372,** ) | |
| Petitioner, ) | |
| vs. ) | No. 3:11-CV-2893-D (BH) |
| ) | |
| **RICK THALER, Director,** ) | Referred to U.S. Magistrate Judge |
| **Texas Department of Criminal** ) | |
| **Justice, Correctional Institutions Division,** ) | |
| Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order* 3-251, this case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant filings and applicable law, the habeas corpus petition should be **DENIED** with prejudice.

**I. BACKGROUND**

On October 19, 2011, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for aggravated sexual assault of a child in cause number 32277CR in Ellis County, Texas. Respondent is Rick Thaler, Director of TDCJ-CID.

**A.    Factual and Procedural History**

On September 20, 2007, the State indicted petitioner for the aggravated sexual assault of J.S., a child younger than 14 years of age, on or about December 31, 2003. (Clerk's Record ("C.R."):2). The indictment charged that petitioner had previously been convicted of third degree rape on December 18, 1992, in South Dakota. *Id.* He pleaded not guilty and was tried before a jury on February 19-20, 2008. (C.R.:1).

Petitioner's ex-wife testified at trial. In January of 2007, at age fourteen, her daughter with petitioner, J.S., said that she did not like her dad. When asked why, J.S. said that petitioner had touched her and performed oral sex on her. (R. 6:142-44). She also said that petitioner had begun

molesting her when the family lived in Nebraska. The family had lived in Nebraska from the time J.S. was two until she was eight or nine. J.S. also said that the last incident happened before petitioner moved out in September of 2004, and she asked her mother not to tell anyone. (R. 6:145-46, 148). The ex-wife further testified that she and petitioner separated in September of 2004 when she discovered that he was cheating on her again, that he moved out and moved in with his girlfriend, that she filed for divorce around the middle of 2005, and that the divorce was finally final over a year later, with no custody issues or disputes over property. (R. 6:112-124). After her daughter told her about the abuse, the ex-wife first spoke to her sister and then her divorce lawyer about the allegations. He referred her to a local therapist so that J.S.'s statement could be taken. J.S. did not tell the therapist anything about the abuse, but instead sat and cried in her office. After the ex-wife was not contacted by the police, she contacted them in February of 2007. (R. 6:147-56).

Katherine Jones, an investigator with CPS, testified that she spoke to J.S. at the child advocacy center, and that she asked J.S. to complete a detailed written statement describing the sexual abuse by petitioner. J.S.'s statement described several instances of fondling, digital penetration, and oral sex. Jones also spoke to petitioner, who told her that the accusation was custody-related, that his ex-wife was vindictive, and that J.S. was mad at him because she did not like his girlfriend and because he had not let her keep her cell phone after she had been in contact with an older man. Because J.S.'s story was consistent, Jones ruled the case as "reason to believe." (R. 6:60, 64, 71-76, 88-90).

At the time of trial, J.S. was fifteen years old. She testified that her father had been angry with her for texting with an older man. After petitioner reprimanded her for her bad behavior, she became angry about his prior behavior towards her. She then told her mother that she did not want

to visit him one weekend, and when her mother asked her why, she said that petitioner had performed oral sex on her. (R. 6:212-15). J.S. further testified that the last time petitioner sexually abused her was in February or March of 2003, when her mother was out of town during a snow storm, and the entire family was watching movies together. She testified that after her brothers fell asleep on the floor, petitioner took off her pants, put his hand inside her underpants, and moved his finger inside her vagina. She also testified that he put his mouth on her vagina. Afterwards, he took her into the kitchen and told her he would not do that anymore. However, J.S. did not believe this because he had said this before. (R. 6:201-23).

J.S. also testified that when the family lived in Nebraska, and before she began the third grade, petitioner began touching her vagina in the same way when he was drunk, and that this occurred more than ten times throughout the years. Petitioner would apologize and would buy her something afterwards. She never told her mother because she did not believe that her mother would protect her. (R. 6:224-35, 240). J.S. also testified that petitioner and his mother at one point asked her to recant her story so that petitioner would not have to go to prison. She called her mother and told her that she had lied and asked her to call the prosecutor, but she decided not to say that because her mother told her that it was wrong to lie. (R. 6:272-84; R. 7:7-9).

Petitioner claimed at trial that the allegations were false and were created by J.S. and her mother because they were angry that petitioner had an affair and then moved out and married the woman with whom he'd had an affair. In addition to cross-examining the State's witnesses, the defense presented testimony from petitioner's mother and his three sons. Petitioner's sons testified that their mother and sister were angry at petitioner and did not like his new wife, and his two older sons testified that they never noticed anything unusual between petitioner and J.S. (R. 7:66-8, 81-6,

3

106-10). Petitioner's mother testified that she visited Midlothian after petitioner's arrest and spent a day with J.S. That day, J.S. told her that she had lied about the allegations, but that she was going to "fix it." (R. 7:136-44).

On February 20, 2008, the jury convicted petitioner of aggravated sexual assault, as charged. (C.R. 1). Petitioner pled not true to the enhancement paragraph. After a punishment hearing, the jury found the enhancement paragraph to be true. (R.8:40-41). The trial court then sentenced petitioner to an automatic life sentence, as required by the Texas habitual offenders statute. (R. 8:42); *see also* TEX. PENAL CODE. ANN. § 12.42(c)((2)(B) (West 2003). Petitioner's conviction was affirmed on direct appeal. *Stooksbury v. State*, No. 10-08-0174-CR, 2009 WL 2883518 (Tex. App.–Waco, Sept. 9, 2009). His petition for discretionary review was refused on February 24, 2010. *See* PD-1382-09.

Petitioner filed a state habeas application raising the same claims as in his federal petition on May 13, 2011. (State Habeas Transcript "S.H.Tr.":93-100). On October 12, 2011, the Texas Court of Criminal Appeals denied his state application on the merits without a written order. (*Id.* at cover).

**B.      Substantive Claims**

On October 19, 2011, petitioner filed his federal habeas petition ("Pet.") raising the following grounds for relief:

(1) his trial attorney rendered ineffective assistance of counsel by:

-failing to object to or request corrective instructions with regard to extraneous evidence offered by the State;

-failing to attempt to impeach Officer Bovinich regarding his inconsistent testimony;

4

>   -failing to object to testimony given regarding petitioner's statements at the time of his arrest;
>
>   -failing to object to, and move for a mistrial due to, *sua sponte* statements the trial judge made to defense counsel in front of the jury;
>
>   -failing to object to the violation of a motion in limine by the State; and
>
>   -failing to call Todd Phillippi and Jamie King as witnesses at trial (Pet. at 7, Memorandum at 2) (ground one);
>
> (2) the cumulative effect of trial counsel's ineffectiveness, the prosecution's violation of petitioner's rights, and the trial court's comments rendered the trial unconstitutional (ground two) (Pet. at 7); and
>
> (3) appellate counsel erred by failing to raise factual and legal sufficiency as claims for relief and instead focusing on claims of ineffective assistance of trial counsel. (ground three) (Mem. at 3).

(Pet. at 6-7). Respondent filed a response on May 8, 2012, and provided the state court records. Petitioner filed a reply brief on May 24, 2012.

## II. AEDPA STANDARD

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's

5

state writs constitute an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). The AEDPA standards enumerated in 28 U.S.C. § 2254(d) therefore apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The

6

resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner claims that his trial counsel was ineffective by failing to: (1) object to extraneous evidence offered by the State and/or request a limiting instruction be given to the jury; (2) object to testimony about petitioner's statements at the time of his arrest; (3) object to, and request a mistrial because of, *sua sponte* statements the trial judge made to defense counsel in front of the jury; (4) object to the violation of a motion in limine by the State; (5) attempt to impeach Officer Bovinich regarding his inconsistent testimony; and (6) call Todd Phillippi and Jamie King as witnesses at trial. (Pet. at 7, Memorandum at 2).

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong pre-

7

sumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

**A.     Failure to Object**

Petitioner asserts that trial counsel was ineffective for failing to object to testimony elicited from State's witnesses about prior extraneous offenses and bad acts by petitioner. (Mem. at 2-3).

    1.     Extraneous Acts and Statements at Arrest

Petitioner first asserts that counsel was ineffective for failing to object to testimony about extraneous bad acts by petitioner, including failure to pay child support, prior violent acts and destruction of property with a gun, and adultery, and for failing to request a limiting instruction in the jury instructions relating to these bad acts. He also asserts that counsel was ineffective for failing to object to testimony about statements petitioner made at the time of his arrest. (Mem., Ex. B at 2-3, 6-7, 15-16).

At the state habeas level, both of petitioner's trial attorneys submitted affidavits. Their affidavits explained that their decision not to object to extraneous bad acts testified to by State's

8

witnesses was "unequivocally" trial strategy because petitioner's defense was to portray the allegations of sexual abuse to be fabrications by a "bitter, angry, vindictive wife" and petitioner's ex-wife and daughter as angry and resentful of petitioner's behavior. (S.H.Tr.:175, 177). They did not object to the introduction into evidence of statements made by petitioner when he was arrested that he would not speak without his attorney and seeking bond arrangements because of trial strategy. Their affidavits state that there had been evidence that law enforcement had searched for petitioner across county lines and had utilized cell phone technology to determine that petitioner was at his mother-in-law's house. Because flight can be considered evidence of guilt, counsel explained that they elicited testimony that petitioner was not fleeing, but was instead seeking legal counsel before his arrest. *Id.*

If counsel has made an adequate investigation, any conscious and informed decision made based on trial tactics and strategy cannot be the basis for a claim of having received ineffective assistance of counsel unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness." *United States v. Cotton*, 343 F.3d 746, 753(5th Cir. 2003), *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002). The trial record reflects that counsel did object on numerous occasions to testimony given by State's witnesses. (R. 6:29, 31, 33, 70, 77, 166, 167, 178, 280). Trial counsel cross-examined petitioner's ex-wife and daughter about disagreements they had with petitioner after the separation and called petitioner's mother and three sons, who also testified about some of these disagreements, as witnesses. (R. 7:67-8, 81, 127-28). In addition to questioning the officer who arrested petitioner about his statements about having a lawyer, defense counsel called petitioner's mother-in-law as a witness to testify about petitioner's efforts to contact a lawyer before he was arrested. (R. 6:187-200; R. 7:20-32, 116-20). The record does reflect that,

rather than object to the relevance of every extraneous bad act committed by petitioner and rather than object to testimony about statements he made when arrested, trial counsel made the strategic decision to cross-examine witnesses and call additional witnesses to explain the circumstances in support of the defensive strategy. Petitioner has not shown that this trial strategy was so poorly chosen that it rendered his entire trial unfair. Furthermore, the jury was specifically instructed that testimony about other acts the defendant committed could not be considered unless the jury found beyond a reasonable doubt that the defendant had committed the acts. (C.R. 31). Trial counsel used reasonable trial strategy, and counsel was not ineffective in this respect.

    2.    <u>Comments by Trial Judge</u>

Petitioner next asserts that counsel was ineffective for failing to object to, and request a mistrial because of, comments that the trial judge made to defense counsel before the jury throughout the trial. (Mem., Ex. B at 3). Petitioner asserts that these comments were admonishments that demonstrated a bias against petitioner and defense counsel. *Id*. at 17. Petitioner references places in the record where the trial judge told counsel that her question was argumentative, sustained objections from the prosecutor to a question about the victim's criminal history and the relevance of another question, told counsel that she could not tell a witness what the law is, overruled a defense objection, and told defense counsel that she had not laid the proper predicate for the admission of a prior inconsistent statement. (R. 6:43, 44, 47, 49, 111, 196).

Petitioner has not shown a reasonable probability that an objection or motion for mistrial based on these statements by the trial judge would have been sustained. On direct appeal, defense counsel asserted that the trial court had commented on the weight of the evidence and demonstrated bias against petitioner by making some of these remarks. Noting that no objection had been made,

10

resulting in error not being preserved, the state appellate court stated that the point of error would have been overruled even if an objection had been made because the comments did not demonstrate bias where "none of the challenged remarks were calculated to convey to the jury the trial court's opinion of the case" and therefore did not violate relevant state law. *Stooksbury*, slip op. at 4-5. Because the challenged comments did not demonstrate bias, and objections to them would not have resulted in petitioner's conviction being overturned on direct appeal, counsel was not ineffective for failing to make these objections. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (holding that the failure to make meritless objections or motions does not constitute deficient performance).

      3.      <u>Motion in Limine</u>

Petitioner also asserts that trial counsel were ineffective for failing to object to the violation of a motion in limine by the State. In particular, petitioner asserts that the State introduced evidence of a "secondary offence" in violation of a motion in limine. (Mem. at 3). Prior to trial, defense counsel moved to have testimony about sexual abuse that petitioner allegedly committed against J.S. that was not alleged in the indictment excluded from evidence. The trial court ruled that such evidence about prior acts between petitioner and the alleged victim was admissible and denied the motion. (R. 6:5-6). Likewise, defense counsel sought to keep out testimony that petitioner asked the victim to lie, and this motion was denied as well. (R. 6:6-7). The record reflects that counsel did attempt to keep evidence of other offenses from being admitted at trial, but these motions were denied. The State therefore did not violate any motion in limine, and counsel was not ineffective in this regard. *See Clark v. Collins*, 19 F.3d at 966.

**B.**      **<u>Failure to Impeach</u>**

Petitioner next asserts that his trial counsel was ineffective for failing to impeach a State

witness with his inconsistent statements. A Midlothian Police Officer testified that he set up the meeting at the child advocacy center for J.S., that he did not know the details of her accusations before this interview, and that he obtained a warrant for petitioner's arrest based on this interview. He believed that petitioner was attempting to evade the police because he did not show up for work when the police attempted to arrest him there. The police then used GPS and petitioner's cell phone to determine his location. They obtained a search warrant, found petitioner was hiding in a bedroom when they arrived, and he stated that he had an attorney and wanted to speak only with his attorney present. (R. 6:24-36).

Through extensive cross-examination, defense counsel established that the officer had not spoken about the allegations to any other people J.S. knew, including her boyfriend, the counselor, or her brothers. Counsel questioned the officer about discrepancies in his testimony regarding what petitioner said when he was arrested. (R. 6:40-50). Petitioner has not shown how counsel was ineffective in this cross-examination or how the witness could have been further impeached by prior statements. Defense counsel was not ineffective in this regard.

## C.   **Failure to Call Witnesses**

Petitioner next asserts that counsel were ineffective for failing to call Todd Phillippi and Jamie King as defense witnesses. At trial, petitioner's ex-wife testified that when her daughter first made her outcry statement to her, she initially contacted her attorney (Phillippi) with this information, who then sent her to a counselor in the area (King), to obtain a statement from J.S. The ex-wife understood that the counselor would contact the police, and when this did not occur, she contacted the police herself. (R. 6:149-56). Both she and J.S testified that J.S. did not make any statement to the counselor and simply cried instead. (R. 6:152, 267).

Petitioner contends that both of these individuals should have been called as witnesses at trial because they could have provided material information regarding why neither contacted the police, as required under Texas law. (Mem., Ex. B at 3, 19). During the state habeas process, both of petitioner's trial attorneys provided affidavits which state that Phillippi was contacted by the defense, but he did not have any relevant information to provide and could provide no testimony to impeach either the victim or her mother. The affidavits further state that defense counsel did consider calling King as a witness but feared that her testimony could potentially expose petitioner to additional charges or further allegations of abuse. (S.H.Tr.:176, 178). The trial record reflects that Jamie King was subpoenaed to appear twice in January of 2008. (C.R. at 91, 104).

The record indicates that the decision not to call either of these witnesses was trial strategy by defense counsel, and petitioner has failed to demonstrate that this strategy was unsound. The Fifth Circuit has specifically held that complaints of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009). To prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F3d at 538; *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Assuming that King and Phillippi were available and willing to testify, petitioner has presented only supposition as to the contents of their proposed testimony, and he fails to show how the failure of either of these individuals to report alleged sexual abuse to the police would have been

13

favorable to his defense. He suggests, with no supporting evidence, that these individuals did not report the claim of sexual abuse because they did not find it credible. (Mem., Ex. B at 19-23). However, the record reflects that trial counsel contacted both of these individuals and declined to call them as witnesses. Petitioner has presented no evidence in contradiction of this strategic decision. Counsel was not ineffective for failing to call these individuals as witnesses at trial.

The state court's denial of these claims was therefore not contrary to federal law, and petitioner's first ground for relief should be denied.

## IV. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his third ground for relief, petitioner asserts that appellate counsel was ineffective for failing to argue that the evidence was legally and factually insufficient to support his conviction, instead focusing on alleged deficiencies of trial counsel.

The federal constitution guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective is also determined by using the standard in *Strickland*. Under *Strickland*, petitioner must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments

14

based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

On direct appeal, appellate defense counsel raised eight points of error, including ineffective assistance of counsel, prosecutorial misconduct, and judicial misconduct. *Stooksbury*, slip op. at 1. At the state habeas level, appellate counsel submitted an affidavit in which he explained that he made the strategic decision not to raise legal or factual sufficiency of the evidence as a point of error on direct appeal because he determined after reading the entire record three times that those points of error did not have any merit. In particular, counsel's affidavit notes that the victim testified with great detail about the abuse, she never recanted during her testimony, her testimony was in all substantive ways the same as the outcry witness, and other witnesses testified to what the victim had told them. Counsel explains that he did not want to raise points of error that lacked merit and have those grounds "take away" from the potential merit of his other grounds. (S.H.Tr.:171-72).

Petitioner has not shown that appellate counsel's strategic decision not to argue sufficiency of the evidence on direct appeal was an unreasonable decision. As noted in his affidavit, the victim testified in great detail about the abuse, and her description of events was consistent throughout her initial outcry statement, her initial written statement, and her testimony. The only testimony offered to contradict her testimony was that of petitioner's mother that the victim told her that she had lied about the allegations. This does not render the evidence insufficient to support the conviction. The jury, as the fact-finder, was responsible for weighing the evidence and resolving conflicts in testimony, and a court cannot substitute its view of the evidence for that of the fact-finder. *See*

*Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985) (noting that the jury, as the fact-finder, is responsible for weighing the evidence and resolving conflicts in testimony, and a court cannot substitute its view of the evidence for that of the fact-finder in a sufficiency of the evidence review). Therefore, appellate counsel was not ineffective for failing to raise unmeritorious grounds on direct appeal, and the state court's denial of this ground is therefore not contrary to federal law. Petitioner's third ground for relief is without merit and should be denied. *See United States v. Phillips*, 210 F.3d at 348 (holding that attorneys do not render deficient representation by failing to present meritless claims on appeal).

## V. CUMULATIVE ERROR

Finally, in his second ground for relief, petitioner asserts that the cumulative effect of the deficiencies of counsel, along with errors at trial committed by the prosecution and the trial court without objection, rendered his trial constitutionally unfair. (Pet. at 7).

In *Derden v. McNeel*, 978 F.2d 1453 (5th Cir. 1992), the Fifth Circuit held that in order for a federal habeas petitioner to prevail on a claim of cumulative error, he must establish that: 1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; 2) the errors were not procedurally defaulted for habeas purposes; and 3) the constitutional errors so infected the entire trial that the resulting conviction violates due process. *Id.* at 1458.

Neither the trial court nor the prosecution committed misconduct at petitioner's trial, and trial counsel were not ineffective. Petitioner has not shown cumulative error because he has not shown constitutional errors that infected his trial such that his due process rights were violated. The state court's denial of this ground was not contrary to federal law, and petitioner's second ground for relief should be denied.

## VI. EVIDENTIARY HEARING

Based on the relevant filings and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VII. RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED on this 22nd day of October, 2012.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE